IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

Alexandria Division

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | Criminal No. 1:19-cr-62-TSE |
| | ) | |
| v. | ) | |
| | ) | |
| SAU HOONG LEE. | ) | |
| | ) | |
| *Defendant*. | ) | |

## POSITION OF THE UNITED STATES
## WITH RESPECT TO SENTENCING

The United States of America, by and through undersigned counsel, and in accordance with 18 U.S.C. § 3553(a) and the United States Sentencing Commission Guidelines Manual ("Guidelines" or "U.S.S.G."), hereby submits its position with respect to sentencing for Defendant, Sau Hoong Lee. The Defendant's advisory Guidelines range is 21-27 months' incarceration (based on a total offense level of 12 and a Criminal History category of IV), plus a mandatory, consecutive two-year term of imprisonment. In light of the factors set forth in 18 U.S.C. § 3553(a), the United States believes that a sentence at the high end of the Guidelines range, specifically 51 months, is both appropriate and reasonable in this case.

### I.     Background

#### A.  Prior Related Convictions

Sau Hoong Lee is a Malaysian native who first obtained a visa to visit the United States in 2001. PSR ¶ 20. Since entering the United States, Lee has accumulated numerous identity theft related convictions, beginning at least as early as 2004.

1. Conviction under the name Janet Lee in Monrovia, California

In 2004, Lee was convicted in Monrovia, California of identity theft, burglary, and grand theft auto under the name "Janet Lee," and served a 16-month sentence. PSR ¶ 66. This conviction stemmed from Lee's purchase of an automobile using the identity of a woman with whom she was living. Several months after moving in with this individual ("AL"), the latter noticed her California driver's license was missing. *Id*. Soon after, AL learned that a BMW had been registered in her name, and subsequent investigation confirmed that Lee had purchased the car from the Monrovia, California BMW dealership by signing AL's name on all the sales documents, including credit and insurance applications. *Id*.

2. Conviction under the name of Claudia Lee in Beverly Hills, California

In 2017, Lee was convicted in Beverly Hills, California of burglary involving a loss of over $100,000 and sentenced to 28 months' incarceration. PSR ¶ 67. This conviction stemmed from Lee's 2001 use of the name "Claudia Lee" to defraud a jewelry store by using a "bad check" to purchase a $350,000 ring. *Id*. During the investigation of this crime, police found that the ring had been pawned for $100,000 and obtained the pawn slip from the pawnbroker. A thumb print on the pawn slip matched fingerprints taken from Sau Hoong Lee in connection with her 2004 arrest in Monrovia, California. Although Lee was charged with this offense in 2011, she was, for reasons explained below, only arrested in 2017.

3. Conviction under the name of Claudia Lee in Monterey Park, California

In 2009, Lee moved in with a 67-year-old woman named Cindy Tran. PSR ¶ 68. Lee met Tran in 2007 at a nail salon where Tran was employed. *Id*. In 2012, Tran reported the Defendant to the Monterey Park, California Police Department, alleging that she had stolen her identity. Subsequent investigation revealed that in 2011, Tran left the country to care for her ill father in

Canada. *Id*. During this time, Lee stole Tran's identity, cashed out her life insurance policy, sold her cars, and borrowed money in her name to purchase another vehicle. Shortly after Lee was arrested in November 2017 for the Beverly Hills conduct, she pled guilty to burglary in connection with this scheme (the remaining 23 counts were dismissed). Lee received a 36-month sentence, to be served concurrently with the 28-month sentence from the Beverly Hills conviction. *Id*.

B. <u>The Instant Prosecution</u>

On March 26, 2019, Lee was charged by superseding indictment in the Eastern District of Virginia with four counts of Identity Document Fraud, in violation of 18 U.S.C. § 1028(a)(7); one count of Identity Document Fraud Against the United States, in violation of 18 U.S.C. § 1028(a)(4); and one count of Aggravated Identity Theft, in violation of 18 U.S.C. § 1028A. These charges stem predominantly from Lee's theft of the identity of her former friend and roommate, Cindy Lin.

Cindy Lin first met Lee (under the name "Cindy Tran") in March 2012. PSR ¶ 12. Lee and Lin briefly lived together. *Id*. Several months after meeting each other, Lee stole Cindy Lin's Virginia driver's license. For the next three years, Lee used Cindy Lin's name to open up credit cards, gamble, and drive various sports cars. *Id*. In 2013, Lin received information concerning credit cards opened in her name at Bloomingdales and Victoria's Secret, of which the former had a $3,355 balance. *Id*. In 2014, Cindy Lin received a letter from the IRS stating that she owed taxes on gambling winnings. *Id*. Then, in 2016, Cindy Lin began receiving mail about hiring defense attorneys for a traffic ticket received in Brunswick County, Virginia. *Id*. Perplexed, Lin contacted the Brunswick County Sheriff's Department and spoke to the officer who issued the traffic ticket. The officer subsequently showed Lin his body camera footage and Lin identified the driver, driving a 2017 Porsche, as the Defendant. Subsequent investigation revealed that on at least four other

occasions in 2014 and 2015, Lee had presented Cindy Lin's driver's license to police officers after being pulled over for traffic violations. PSR ¶ 30, 68. Each time, Lee was driving a different Porsche or Ferrari and during each stop Lee signed Cindy Lin's name on the summons she was issued. PSR ¶ 17, 32.

During this time, Lee also used Lin's driver's license to fly at least 27 times in or out of Dulles International Airport. PSR ¶ 28. During each of these trips, Lee presented Cindy Lin's driver's license to Transportation Security Administration officials at the airport's security checkpoint. PSR ¶ 29. Lin's Virginia driver's license was found in Lee's possession upon her arrest in 2017. PSR ¶ 39. Also in her possession was the Florida driver's license of Qin Ru Pan, the mother of one of Lee's friends. Lee met Qin Ru Pan in 2016, and at some point thereafter the latter lost her Social Security card, Permanent Resident identification card, and Florida driver's license. PSR ¶ 38. Further investigation revealed that in 2017, Lee leased her Los Angeles, California apartment using Qin Ru Pan's name and driver's license. PSR ¶ 13.[1]

## II.    Sentencing Argument

In *United States v. Booker*, 543 U.S. 220 (2005), the Supreme Court rendered the Sentencing Guidelines purely advisory, emphasizing that a sentencing court must not only consider the Guidelines, but also the sentencing factors set forth in 18 U.S.C. § 3553(a). *Id*. at 264. The Supreme Court reaffirmed this principle in *United States v. Kimbrough*, 552 U.S. 85 (2007), emphasizing that "the Guidelines, formerly mandatory, now serve as one factor among several courts must consider in determining an appropriate sentence." *Id*. at 90. Finally, in *Gall v. United States*, 552 U.S. 38 (2007), the Supreme Court instructed that the sentencing court should calculate

---

[1] Lee also used the identity (including the name, driver's license number, social security number, and birthday) of another individual, "SY," whose nail salon she used to frequent and whose identification documents went missing approximately four or five years ago, to lease her McLean, Virginia condominium. *See* Exhibit C at 1-3. All exhibits will be filed separately under seal.

the Sentencing Guidelines range, permit the government and the defendant "an opportunity to argue for whatever sentence they deem appropriate," consider all of the Section 3553(a) factors, and finally pronounce a sentence based on the relevant factors. *Id*. at 49-50.

In fashioning an appropriate sentence, the Court "must consider the 18 U.S.C. § 3553(a) factors and 'make an individualized assessment based on the facts presented.'" *United States v. Smalls*, 720 F.3d 193, 198 (4th Cir. 2013) (quoting *Gall*, 552 U.S. at 50). These factors are: (1) "the nature and circumstances of the offense and the history and characteristics of the defendant"; (2) "the need for the sentence imposed," among other things, "to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense," as well as "to protect the public from further crimes of the defendant" and "to afford adequate deterrence to criminal conduct"; (3) "the kinds of sentences available"; (4) the Sentencing Guidelines; (5) policy statements issued by the Sentencing Commission; (6) "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct"; and (7) "the need to provide restitution to any victims of the offense." § 3553(a).

As noted in the § 3553(a) factors, the Court must consult and take into account the Sentencing Guidelines when sentencing. *See United States v. Helton*, 782 F.3d 148, 151 (4th Cir. 2015). Despite their advisory nature, the Sentencing Guidelines remain "the 'starting point' and 'initial benchmark' for sentencing." *United States v. Davis*, 855 F.3d 587, 595 (4th Cir. 2017) (quoting *Beckles v. United States*, 137 S. Ct. 886, 894 (2017)). In short, "[t]he Guidelines . . . continue to guide district courts in exercising their discretion by serving as 'the framework for sentencing,'" but they do not constrain the Court's discretion. *Beckles*, 137 S. Ct. at 894 (quoting *Peugh v. United States*, 133 S. Ct. 2072, 2083 (2013)).

### A.  Guidelines Range

The Probation Office calculated Lee's advisory Guidelines range as 21-27 months' incarceration (based on a total offense level of 12 and a Criminal History category of IV), plus a mandatory, consecutive two-year term of imprisonment. PSR ¶ 93-94. For the reasons explained below, the government maintains that Lee does not merit the two-level reduction for acceptance of responsibility under U.S.S.G. § 3E1.1 and deserves a two-level increase under U.S.S.G. § 3C1.1 for obstruction of justice. Should the Court agree, the Defendant's offense level would rise to 16 and her total Guidelines range would be 33-41 months' incarceration, plus the mandatory, consecutive two-year term of imprisonment.

### B.  Section 3553(a) Factors

Since entering the United States in 2001, Lee has perfected the art of identity theft. Preying on other women with whom she either lived or ingratiated herself, Lee has managed to reside in this country for over a decade under a series of assumed identities. Each of Lee's identity theft schemes was built on the prior scheme's foundation, as Lee would often introduce herself to her newest victim under the assumed name of her last victim. Lee's years-in-the-making edifice of lies and misrepresentations culminated in the theft of Cindy Lin's identity in 2012. For several years, Lee lived under Cindy Lin's name. Doing so allowed her not only to conduct business under an entirely new identity, but to avoid arrest on almost three dozen California state charges each time she was stopped by the police. Using Lin's identity also enabled Lee to anonymously travel around the country, each time implicating the very core of the identity theft statute. *Cf. United States v. Luke*, 628 F.3d 114 (4th Cir. 2010) (discussing 18 U.S.C. § 1028(a)(4) and noting that "using a fraudulently obtained passport 'obstruct[s] functions of the government,' namely the government's

duty to police entry and exit from the country." (quoting H.R. Rep. 97-802, at 11, 1982 U.S.C.C.A.N. at 3529)).

Lee's offenses were particularly egregious as she maintained contact with Cindy Lin, the victim, throughout her multi-year use of her identity, and was, as even Lee admits, "very close" to Lin. PSR ¶ 18, 34, 46. During these years, Lin informed Lee that her identity had been stolen, that credit cards had been opened in her name, and that someone had been incurring traffic tickets in her name. PSR ¶ 34. None of this deterred Lee, who, likely in an effort to cover her tracks, once even boldly secured an attorney for Lin to cause the dismissal of a traffic ticket she had caused under the (correct) theory that someone had stolen Lin's driver's license.

All of this was committed while Lee was essentially "on the run" from numerous California state identity theft related charges. These charges are integral to the instant offenses, as Lee's earlier theft of Cindy Tran's identity allowed her to initially present herself to Cindy Lin as "Cindy Tran." PSR ¶ 12. Although a fugitive, Lee continued living in plain sight, driving Ferraris and Porches and living in luxury condominiums. To achieve this feat, however, the Defendant needed a new identity; hence the utility of the all-too-trusting Cindy Lin, who, according to her statement to the FBI, viewed the Defendant as a "mother figure." *See* Exhibit A at 2. Neither Lee's prior period of incarceration nor the outstanding state charges, nor her ostensibly close relationship with Cindy Lin, deterred her from committing the instant offenses.

Moreover, although Lee pled guilty to using Cindy Lin's driver's license to engage in the above-described activity, she now claims that she informed Cindy Lin in 2014, after being pulled over, that she used her license, and then did so each time thereafter. PSR ¶ 46. Of course, this cannot be true. Between 2014 and 2016, Lin told Lee that her identity had been stolen and that someone was incurring traffic tickets in her name. PSR ¶ 34. In 2016, Lin contacted the Brunswick

County Sheriff's Department to inquire about a traffic ticket she did not incur. PSR ¶ 12. Had Lee told Lin that she was using her driver's license, Lin would not have needed to discuss the theft of her identity with Lee, apparently as friends, or speak with the Brunswick County Sheriff's Department about the mysterious traffic ticket. Indeed, under Lee's theory, Lin would have known it was her all along. It borders on the absurd to claim that Lin, whose driver's license went missing in 2012, PSR ¶ 12, would learn that Lee used it (and therefore possessed it) in 2014, and then continued to allow Lee to use it throughout the remainder of 2015 and 2016. Had Lee told Lin after each ticket that she was the culprit, as she claims, PSR ¶ 46, Lin would not have needed to contact the Brunswick County Sheriff's Department's in the first place. Indeed, in her interview with the FBI, Lin stated that it was only after seeing Lee's picture in the Brunswick County officer's body camera that she suspected Lee had stolen her license. *See* Exhibit A at 3.

Without quite saying as much, in claiming Lin knew of (and by extension permitted) Lee's use of her license, the Defendant essentially denies Lin was ever victimized. Such a claim also effectively subverts Lee's guilty plea. Lee admitted to stealing Lin's license in or around August or September of 2012. PSR ¶ 12. Her letter to the Court also admits as much. *See* Dkt. 43-2. Yet, if Lin knew of (and permitted) Lee's use of her license, as she appears to claim, then Lee is virtually denying that she ever stole the license in the first place.[2] For these reasons, the government continues to object to the application of a two-level reduction for acceptance of responsibility under U.S.S.G. § 3E1.1. While it is true that the Defendant pled guilty, that "does not, standing alone, entitle a defendant to a reduction as a matter of right." *United States v. Dugger*, 485 F.3d 236, 239 (4th Cir. 2007) (quoting *United States v. Harris*, 882 F.2d 902, 905 (4th Cir. 1989)).  To

---

[2] Relatedly, Lee claims that Qin Ru Pan knew of and consented to Lee's use of her driver's license to register her Los Angeles condominium. PSR ¶ 46. Notwithstanding the ludicrousness of this claim, Qin Ru Pan also flatly denied to the FBI ever authorizing anyone to use her driver's license. *See* Exhibit B at 1.

earn the reduction, a defendant must prove to the court by a preponderance of the evidence "that he has clearly recognized and affirmatively accepted personal responsibility for his criminal conduct." *Id.* (quoting *United States v. Nale*, 101 F.3d 1000, 1005 (4th Cir. 1996)). Lee has not done so.

For over a decade, Lee has spun a web of deceit, defrauding and conning anybody she found sufficiently vulnerable. This prosecution attempts to untangle this web, yet the Defendant continues her fabrications before this Court. These attempts to minimize the nature and extent of her conduct show that a reduction under § 3E1.1 for acceptance of responsibility is undeserved. *See United States v. May*, 359 F.3d 683, 693-95 (4th Cir. 2004) (defendant's statement to probation officer downplaying and "explaining away" offense shows that § 3E1.1 reduction unwarranted); *United States v. Urrego-Linares*, 879 F.2d 1234, 1239-40 (4th Cir. 1989) (same); *see also United States v. Boggs*, 584 F. App'x 130, 131 (4th Cir. 2014) (defendant's actions "exhibited an effort to justify or explain away at least part of his criminal conduct, and were thus inconsistent with an acceptance of responsibility."); *United States v. Young*, 414 F. App'x 541, 545-46 (4th Cir. 2011) (backtracking from admissions of guilt in the statement of facts "demonstrate[s] [defendant's] attempt to minimize his culpability" and are inconsistent with acceptance of responsibility); *United States v. Toler*, 110 F. App'x 327, 329 (4th Cir. 2004) (lack of candor in presentence interview inconsistent with acceptance of responsibility).

The reduction for acceptance of responsibility is unwarranted for another, related reason; the Defendant continues to be untruthful regarding her true identity. *See United States v. Sinon*, 2 F. App'x 312, 313 (4th Cir. 2001) (despite pleading guilty, defendant "failed to accept responsibility for his crime by lying about his identity.") (citing *Nale*, 101 F.3d at 1005). On June 27, 2019, at her arraignment, the Defendant identified herself to the Court as Sau Hoong Lee. In

her October 2017 interview with the FBI, however, the Defendant stated that her name was Siew

Im Cheah, but that she used the name Sau Hoong Lee. PSR ¶ 40. The Defendant then identified

herself as Sau Hoong Lee during the presentence interview. PSR ¶ 80. Yet, the PSR acknowledges

that based on Lee's daughter's birth certificate and application for permanent legal status, as well

as fingerprints provided by the Malaysian Central National Registry, the Defendant's name is,

actually, Siew Im Cheah. *Id.* at n.1. Given the central role identity plays in this case, the

Defendant's use of a false name is another indication that she has not accepted responsibility for

her actions.[3]

For these same reasons, Lee merits application of a two-level increase for obstruction of

justice under U.S.S.G. § 3C1.1. *See Sinon*, 2 F. App'x at 313 ("deceitful conduct" involving

pleading guilty under false name and lying to probation officer about his background were proper

basis for § 3C1.1's application) (citing *United States v. Saintil*, 910 F.2d 1231, 1232 (4th Cir.

1990)). A two-level enhancement applies "[i]f (A) the defendant willfully obstructed or impeded,

or attempted to obstruct or impede, the administration of justice with respect to the investigation,

prosecution, or sentencing of the instant offense of conviction, and (B) the obstructive conduct

related to (i) the defendant's offense of conviction and any relevant conduct; or (ii) a closely related

offense." U.S.S.G. § 3C1.1. Among other things, obstructive conduct includes "providing

materially false information to a judge or magistrate judge"; "providing a materially false

statement to a law enforcement officer that significantly obstructed or impeded the official

investigation or prosecution of the instant offense"; and "providing materially false information to

---

[3] The Defendant also claims to have been unemployed since 2001. PSR ¶ 90. The government is prepared
to present voluminous email records showing the Defendant's engagement in several business ventures and
will file a representative sample with this motion. *See* Exhibit D. During this period of claimed
unemployment, the Defendant flew domestically dozens of times (often for business related reasons) and
between 2013 and 2017 purchased nine Porsches and six Ferraris for a total of over two million dollars.
The Defendant's monthly rent prior to arrest was $14,000 dollars.

a probation officer in respect to a presentence or other investigation for the court." U.S.S.G. § 3C1.1 cmt. n. 4(E)-(G). Because the Defendant cannot be both Sau Hoong Lee and Siew Im Cheah, her conduct satisfies at least one of these criteria.

First, the Defendant possibly lied to the Court on June 27, 2019, and during the presentence interview, by stating that her name was Sau Hoong Lee, when in fact it was Siew Im Cheah. *See Saintil*, 910 F.2d at 1232 (affirming application of § 3C1.1 where defendant provided false name at the time of arrest and during pretrial interview, despite providing true name to Magistrate Judge during arraignment); *United States v. Romulus*, 949 F.2d 713, 717 (4th Cir. 1991) (same where defendant provided false name to Magistrate Judge during initial appearance); *see also United States v. Olajide*, 978 F.2d 1257 (4th Cir. 1992) (Table) (Section 3C1.1 enhancement proper under *Saintil* where defendant concealed true identity at arraignment); *United States v. Encarnacion*, 925 F.2d 1457 (4th Cir. 1991) (Table) (same where defendant used alias throughout trial). Alternatively, the Defendant lied to the FBI in October 2017 by stating that her name was Siew Im Cheah, when in truth, it was Sau Hoong Lee. The government submits that it is still investigating the Defendant's true identity and that her false statements where therefore material to that investigation.

Lee's decades-long career of deception merits a significant term of incarceration. On its own, the Defendant's conduct is serious enough. Yet, compounding the matter, and despite pleading guilty, the Defendant continues to manufacture tales aimed at deceiving the Court. Clearly, the Defendant has not accepted responsibility for her offenses. For these reasons, the government submits that a 51-month term of incarceration is appropriate in this case.

Respectfully submitted,

G. Zachary Terwilliger
United States Attorney

By:           /s/
           Gordon D. Kromberg
           Assistant United States Attorney
           Joseph Attias
           Special Assistant United States Attorney
           Office of the United States Attorney
           2100 Jamieson Avenue
           Alexandria, VA 22314
           Phone: 703-299-3700
           Joseph.Attias@usdoj.gov

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on September 27, 2019, I filed the foregoing with the Clerk of

Court using the CM/ECF system, which will send an electronic copy to all counsel of record

in this matter.


By: _____/s/_____
                Joseph Attias
                Special Assistant United States Attorney
                Eastern District of Virginia
                United States Attorney's Office
                2100 Jamieson Avenue
                Alexandria, Virginia 22314
                Phone: 202-616-0736